

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| UNITED STATES OF AMERICA |
|---|
| – against – |
| BRIAN ADAMS, |
| Defendant. |

14-CR-0650

Statement of Reasons for Sentence
Pursuant to 18 U.S.C. § 3553(c)(2)

**JACK B. WEINSTEIN, Senior United States District Judge:**

## Table of Contents

I. Introduction ................................................................................................................. 2
II. Instant Offense ............................................................................................................ 2
III. Guilty Plea .................................................................................................................. 2
IV. Sentencing Hearing ..................................................................................................... 2
V. Offense Level, Category, and Sentencing Guidelines Range ..................................... 3
    A. Count 1: Sex Trafficking Conspiracy, Jane Doe #1 ............................................ 3
    B. Count 5: Sex Trafficking Conspiracy, Victim #1-9 ............................................. 3
    C. Count 8: Sex Trafficking of a Child, Victim #7 .................................................. 5
    D. Count 17: Promotion of Prostitution, Victim #6 and #8 ..................................... 5
    E. Multiple Count Adjustment ................................................................................. 6
VI. Law .............................................................................................................................. 7
VII. 18 U.S.C. § 3553(a) Considerations ........................................................................... 8
VIII. Sentence .................................................................................................................... 14
IX. Conclusion ................................................................................................................ 14

## I. Introduction

Defendant is a major serial sex offender. He forced young girls into prostitution on a large scale. He is a major continuing threat to society.

## II. Instant Offense

Defendant is a 36-year-old American citizen. Presentence Investigation Report ("PSR") at 2. On November 21, 2014, he was arrested by federal authorities at the Kings County Criminal Court during an appearance for a state assault charge. *Id.* at ¶ 49. In long periods between January 2005 and November 2014, the defendant, together with others, conspired to recruit minor females and force them into commercial sex acts for his financial profit. Superseding Indictment, Aug. 10, 2015, ECF No. 66 ("Superseding Indictment") at ¶ 1.

## III. Guilty Plea

Defendant pled guilty to counts 1, 5, 8, and 17 of the 17-count indictment. The counts are: (1) sex trafficking conspiracy of Jane Doe #1; (5) sex trafficking conspiracy of Victims #1-9; (8) sex trafficking of a child, Victim #7; and (17) promotion of prostitution. *See* Transcript of Criminal Cause for Pleading, Feb. 26, 2016, ECF No. 89, ("Feb. 26 Transcript") 3:16-25.

## IV. Sentencing Hearing

On July 6 and 7, 2017, the court held a sentencing hearing. *See* July 6 and 7 Hr'g Tr. The proceedings were videotaped to record courtroom atmosphere, as well as some of the subtle factors and considerations that a district court must consider in imposing a sentence. *See* 18 U.S.C. § 3553(a); *In re Sentencing*, 219 F.R.D. 262, 264-65 (E.D.N.Y. 2004) (describing the value of video recording for the review of sentences on appeal).

## V. Offense Level, Category, and Sentencing Guidelines Range

Defendant pled guilty to several serious sex crimes perpetrated against many minors: involving them in prostitution and physically coercing them to keep them as prostitutes.

### A. Count 1: Sex Trafficking Conspiracy, Jane Doe #1

Defendant pled guilty to one count of a sex trafficking conspiracy pursuant to 18 U.S.C. § 371. Under the federal sentencing guidelines ("the guidelines"), defendant's base offense level is 30. 18 U.S.C § 2241(c); PSR at ¶ 119. The offense level is enhanced by 4 levels per U.S.S.G. § 2A3.1(b)(1) because defendant threatened Jane Doe #1 on multiple occasions when she tried to quit the "escort service" prostitution ring. PSR at ¶ 120. The offense level is increased by 2 levels per U.S.S.G. § 2A3.1(b)(2)(A) since Jane Doe #1 was less than 16 years old when the offense first began. *Id.* at ¶ 121. The offense level is increased by 3 levels per U.S.S.G. § 2A3.1(b)(4)(C) due to sustaining an injury from the offense that was of a degree between life threatening and serious bodily injury because Jane Doe #1 was seriously beaten by the defendant causing a miscarriage. *Id.* at ¶ 122. The offense level is increased by 4 levels in accord with U.S.S.G. § 3B1.1(a) because defendant was a leader of the sex trafficking conspiracy which involved at least 5 participants. *Id.* at ¶ 124. In light of these enhancements, Defendant's total adjusted offense level is 43. *Id.* at ¶ 126.

### B. Count 5: Sex Trafficking Conspiracy, Victim #1-9

Count 5 is separated into nine subparts (5(a) – 5(i)) for each victim of Defendant's sex trafficking conspiracy. Count 5 generally covers defendant's criminal conduct that violated 18 U.S.C. §§ 1594(c), 1591(a)(1), and 1591(a)(2). The substantive offense involving Victims #1-5, #7, and #9, is sex trafficking of a minor. The substantive offense involving Victims #6 and #8 is sex trafficking. The offense involving Victims #1-5, #7, and #9 has a base offense level of 24.

3

PSR at ¶¶ 127, 135, 143, 151, 159, 173, and 187. The offense involving Victims #6 and #8 has a base offense level of 14. *Id.* at ¶¶ 167, 181.

The offenses against Victims #7 and #9 (count 5 subparts (g) and (i)), have the highest adjusted offense level of 34. *Id.* at ¶¶ 180, 194. These offense levels were enhanced from the base level of 24 by 2 levels for the undue influence of a minor to engage in prohibited sexual conduct according to U.S.S.G. § 2G1.3(b)(2)(B); 2 levels for the use of a computer or interactive computer service to entice, encourage and solicit a person to engage in prohibited sexual contact with a minor, using the internet advertisements per U.S.S.G. § 2G1.2(b)(3)(B); 2 levels because the offense involved the actual prostitution of the victims, involving sex acts with multiple men for money per U.S.S.G. § 2G1.2(b)(4)(A); and 4 levels in accord with U.S.S.G. § 3B1.1(a) because defendant was a leader of a sex trafficking conspiracy which involved at least 5 participants. *See, e.g., id.* at ¶¶ 173-179.

Count 5 subparts (a) – (e) for Victims #1-5 have an adjusted offense level of 29. *Id.* at ¶¶ 134, 142, 150, 158, and 166. The base offense level of 24 was enhanced by 8 levels for the undue influence of a minor to engage in prohibited sexual conduct, the use of a computer or an interactive computer service to entice, encourage and solicit a person to engage in prohibited sexual conduct with a minor through advertisements on the internet, and for the defendant's role as the leader of a sex trafficking conspiracy that involved at least 5 participants. U.S.S.G. §§ 2G1.3(b)(2)(B), (b)(3)(B), 3B1.1(a). The offense level was reduced by 3 levels per U.S.S.G. § 2X1.1(b)(2) because some of the victims did not attend an arranged sex party or participate in prostitution. *See, e.g.*, PSR. at ¶¶ 127-133.

Count 5 subparts (f) and (h) for Victims #6 and #8 had an adjusted offense level of 22 and 18, respectively. *Id.* at ¶¶ 172, 186. The base offense level of 14 was enhanced for count

4

5(f) by 8 levels because the offense involved coercion—the defendant warned the victim something bad would happen to her if she did not prostitute for him—and for the defendant's role as the leader of a sex trafficking conspiracy that involved at least 5 participants. U.S.S.G. §§ 2G1.1(b)(1), 3B1.1(a). Count 5(h) was increased by 4 levels for the defendant's role as the leader of a sex trafficking conspiracy that involved at least 5 participants. U.S.S.G. § 3B1.1(a); *see, e.g.*, PSR at ¶¶ 167-171.

### C. Count 8: Sex Trafficking of a Child, Victim #7

Per 18 U.S.C. § 1591(b)(2), defendant pled guilty to count 8 of the 17-count offense. Under the guidelines, defendant's base offense level is 30. U.S.S.G. § 2G1.3(a)(2); PSR at ¶ 111. The offense level is enhanced by 2 levels because the offense involved the strong influence on a minor to engage in prohibited sexual conduct per U.S.S.G. § 2G1.3(b)(2)(B); by 2 levels under U.S.S.G. § 2G1.2(b)(3)(B) because the offense involved the use of a computer or an interactive computer service to entice, encourage and solicit a person to engage in prohibited sexual contact with a minor; and by 2 levels per U.S.S.G. 2G1.3(b)(4)(A) because the offense involved the commission of a sex or sexual contact by Victim #7 with 7 to 10 men in exchange for money. *Id.* at ¶¶ 112-114. The offense is increased by 4 levels in accordance with U.S.S.G. § 3B1.1(a) because defendant was a leader of a sex trafficking conspiracy which involved at least 5 participants. In light of these enhancements, Defendant's total adjusted offense level is 40. PSR at ¶ 118.

### D. Count 17: Promotion of Prostitution, Victim #6 and #8

Count 17 is separated into two subparts (17(a) and 17(b)) for Victims #6 and #8 of defendant's sex trafficking conspiracy. Both subparts have a base offense level of 14. PSR at ¶¶ 195, 201. Both subpart offense levels are increased by 4 levels pursuant to U.S.S.G. § 3B1.1(a)

5

because of the defendant's involvement as the leader of a sex trafficking conspiracy that involved at least 5 participants. *Id.* at ¶¶ 198, 204. Subpart 17(a) is increased by 4 levels in accordance with U.S.S.G. 2G1.1(a)(2) because the offense involved the coercion of Victim #6, who was threatened by defendant with something bad that would happen to her if she did not prostitute for him. *Id.* at ¶ 196. The total adjusted offense level for count 17(a) is 22, and the total adjusted offense level for count 17(b) is 18. *Id.* at ¶¶ 200, 206.

### E. Multiple Count Adjustment

The greatest of the adjusted offense levels among the four counts was count 1 with an offense level of 43. *Id.* at ¶ 208. This offense level was increased by 2 levels resulting in a combined adjusted offense level of 45. *Id.* at ¶¶ 209-10. The offense level was decreased by three points pursuant to U.S.S.G. § 3E1.1(a)-(b) for acceptance of responsibility within a timely manner. *Id.* at ¶¶ 212-13. Defendant's total adjusted offense level is 42. *Id.* at ¶ 214. The defendant's offense level was further decreased 1 level per the plea agreement the defendant had with the government, bringing his total adjusted offense level to 41. Government Sentencing Memorandum, June 23, 2017, ECF No. 116, ("Gov't Sentencing Mem.") at 11. His criminal history category is I. PSR at ¶ 219. The guidelines imprisonment range is 324 to 405 months. *See* U.S.S.G. Ch. 5 Pt. A.

Count 1 carries a maximum term of imprisonment of 5 years. 18 U.S.C. § 371. Count 5 carries a maximum term of imprisonment of life. 18 U.S.C. §§ 1591(a)(1), 1591(a)(2) and 1594(c). Count 8 carries a minimum term of imprisonment of 10 years and the maximum term is life. 18 U.S.C. § 1591(a)(1), 1591 (a)(2) and 1591(b)(2). Count 17 carries a maximum term of imprisonment of 5 years. 18 U.S.C. § 1952(a)(3)(A).

The guidelines indicate that counts 5 and 8 carry an imprisonment range of 360 months to life, and counts 1 and 17 are restricted to 60 months of imprisonment on each count.

The statutory provisions state that a term of supervised release not greater than 3 years may be imposed for counts 1 and 17. 18 U.S.C. § 3583(b)(2). Counts 5 and 8 require that a term of supervised release for 5 years to life on each count be imposed. 18 U.S.C. § 3583(K).

The guidelines indicate a term of supervised release of at least 1 to 3 years for counts 1 and 17, and require a minimum of 5 years of supervised release for counts 5 and 8. U.S.S.G. § 5D1.2(a)(2); U.S.S.G. § 5D1.2(b)(2).

A special assessment of $400 (100 per count) is mandatory. See 18 U.S.C. § 3013. The maximum fine pursuant to the statutory provisions for counts 1, 5, 8, and 17 is $250,000 on each count. 18 U.S.C. § 3571(b). The fine range pursuant to the guidelines is from $25,000 to $250,000. U.S.S.G. §§ 5E1.2(c)(3) and 5E1.2(h)(1).

## VI. Law

In *United States v. Booker,* the Supreme Court held that the guidelines are advisory, thereby allowing a departure by the sentencing court when a departure is in the interest of justice in light of the statutory concerns expressed in section 3553(a). *United States v. Booker,* 543 U.S. 220, 245–46 (2005); *see also United States v. Cavera,* 550 F.3d 180, 189 (2d Cir. 2008) (en banc) ("It is now, however, emphatically clear that the Guidelines are guidelines—that is, they are truly advisory. A district court may not presume that a guidelines sentence is reasonable; it must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense.").

When sentencing, the court must "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). If the sentence is a departure from the range of the

guidelines referred to in section 3553(a)(4) of title 18, the court shall indicate the specific reasons for imposing a different sentence. *See* 18 U.S.C. § 3553(c)(2). These "reasons must also be stated with specificity in a statement of reasons form." *Id.* Even though the guidelines are now advisory rather than mandatory, *Booker*, 543 U.S. at 245–46, the sentencing court must still adhere to the requirements of 18 U.S.C. § 3553(c)(2). *United States v. Jones*, 460 F.3d 191, 197 (2d Cir. 2006). If the sentencing court provides a written statement of reasons, it shall be "a simple, fact-specific statement explaining why the Guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Rattoballi*, 452 F.3d 127, 138 (2d Cir. 2006), *abrogated in part on other grounds by Kimbrough v. United States*, 552 U.S. 85 (2007). The written statement should demonstrate that the sentencing court "'considered the parties' arguments' and that it has a 'reasoned basis for exercising [its] own legal decisionmaking authority.'" *Cavera*, 550 F.3d at 193 (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)).

In view of the excessive incarceration rates in the recent past and their unnecessary, deleterious effects on individuals sentenced, society, and our economy, parsimony in incarceration is prized. *See, e.g.*, 18 U.S.C. § 3553(a) ("The court shall impose a sentence sufficient, but not greater than necessary."); National Research Council of the National Academies, *The Growth of Incarceration in the United States, Exploring Causes and Consequences*, 8 (2014) ("*Parsimony*: the period of confinement should be sufficient but not greater than necessary to achieve the goals of sentencing policy.").

### VII. 18 U.S.C. § 3553(a) Considerations

The court considered the "nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Although it is his childhood that made

the defendant capable of the heinous crimes he committed, the court needs to sentence him as the person he is today—a continuing hazard to young girls he presses into prostitution.

Throughout most of his childhood, the defendant's father subjected him, his siblings, and his mother to aggressive physical and mental abuse. PSR at ¶ 224. His father was a chronic drug and alcohol abuser; he did not hold a steady job. *Id.* His mother's boyfriend eventually moved into the home with the defendant and his siblings. *Id.* at ¶ 225. During his childhood, the defendant was raised to believe his mother's boyfriend was his biological father. *Id.* His biological father provided no child support and remained a chronic substance abuser, and he repeatedly came to the family home intoxicated where he would physically fight with the defendant's mother. *Id.*

As a minor, defendant was sent to Four Winds Hospital for psychiatric treatment. *Id.* at ¶ 226. His mother told hospital officials that the defendant had had a history of violent behavior since he was 2 years old and had assaulted one of his brothers and a caseworker. *Id.* At his discharge, the defendant's residence was noted to be unstable, in disrepair, and overcrowded with 15 cats. *Id.* During most of the instant offenses, the defendant's mother resided with him and many people who participated in the offense. *Id.* at ¶ 228.

Defendant lacks a high school diploma. *Id.* at ¶ 242. He completed kindergarten through 6th grade, 1 or 2 years of intermediate schooling, received schooling as an inpatient at Four Winds Hospital, had an at-home tutor from the Department of Education, and was lastly enrolled in the Hetrick-Martin institute, a public high school in New York City created for gay, lesbian, and transgendered students. *Id.* at ¶ 241.

Defendant was employed intermittently. He worked for FedEx from September 2011 through November 2014. *Id.* at ¶ 245. He also worked on and off as a car mechanic from

January 2009 to August 2011, and worked as a load master from January 2007 to December 2008. *Id.* at ¶¶ 246-47.

The defendant has no marital history, but was involved in relationships with two partners, both of whom are co-defendants in the instant sex offenses and one of whom is Jane Doe #1. *Id.* at ¶ 230. Both of the relationships began when the women were minors and the defendant was in his 20s. *Id.* at ¶¶ 230-31. Although the defendant is listed as the father on the birth certificates of the children born to the woman with whom he was in his second serious relationship, it is unclear whether the defendant is the biological father to the two children because she had multiple sexual relationships simultaneously as a result of the instant offenses. *Id.* at ¶ 231.

In 2005, the defendant began conspiring to recruit women to perform commercial sex acts for his financial benefit. Superseding Indictment at ¶ 1. For the next ten years, the defendant periodically controlled a prostitution ring which included minors as young as 12. He often lured girls to live in his home and had them pay for rent, food, and other expenses by contributing to a prostitution ring, which entailed having sexual encounters with men he arranged for them. Gov't Sentencing Mem. at 2. He advertised sexual services through the internet. *Id.* He organized private sex parties where he had the young girls he recruited dance and have sex with men in exchange for money. PSR at ¶ 12.

Between January 2005 to June 2008, the defendant had a minor, Jane Doe #1, perform sexual acts for money. Feb. 26 Transcript 31:12-19. The defendant continued this practice between September 2010 and January 2014 when he agreed with Jane Doe #1 to arrange for minors to perform sexual acts for money. *Id.* 31:20-25. Jane Doe #1 provided testimony to the court that she was severely beaten and raped by the defendant and subjected to multiple gang rapes that he orchestrated. Letter from Jane Doe #1 dated July 5, 2017 ("July 5 Letter").

Additionally, Jane Doe #1 states that the defendant's use of physical abuse led to her miscarriage. *Id.*

In light of the circumstances of his crimes, fifteen years of incarceration will likely be extraordinarily hard for the defendant. *See United States v. Lawrence*, 2017 WL 2462530, at *11 (E.D.N.Y. June 6, 2017) (quoting *United States v. D.W.*, 198 F.Supp.3d 18, 23 (E.D.N.Y. 2016)) ("The trial judge cannot close his or her eyes to the conditions a particular defendant being sentenced will necessarily experience in prison. . . . the prison environment must be considered by the sentencing judge in estimating total harm and benefits to prisoner and society—a utilitarian as well as a compassionate exercise.").

As a convicted child sex offender, the defendant will probably be subjected to severe abuse from fellow inmates. *See Allen v. Amato*, 2013 WL 5211105, at *12 (N.D.N.Y. Sept. 16, 2013) ("inmates with sex offender status were generally more vulnerable and susceptible to victimization . . . districts have deemed an inmate's sex offender status to represent a safety issue requiring protective custody."); *see Arnold v. Cty. of Nassau*, 89 F. Supp. 2d 285, 299 (E.D.N.Y. 2000), *vacated*, 252 F.3d 599 (2d Cir. 2001) (noting that "the correctional facility properly recognized that plaintiff, as a pre-trial sex crime detainee, was deserving of special care to guard against a foreseeable risk of inmate attack"); Alice Ristroph, Sexual Punishments, 15 Colum. J. Gender & L. 139, 159-60 (2006) (explaining that sex offenders are a "distinct and disfavored category within prison populations, subject to heightened abuse from both corrections officers and fellow inmates"); Christopher D. Man & John P. Cronan, *Forecasting Sexual Abuse in Prison: The Prison Subculture of Masculinity As A Backdrop for "Deliberate Indifference"*, 92 J. Crim. L. & Criminology 127, 174–75 (2002) (discussing how sex offenders are treated as "the

lowest of the low" and child sex offenders are treated especially brutal since "rape of the child molester is perceived as justified").

To protect the defendant from abuse due to his status as a child sex offender, the prison officers will probably place the defendant in solitary confinement for substantial periods of time. *See D.W.*, 198 F. Supp. at 23; s*ee also Lawrence*, 2017 WL 2462530, at *10 (quoting *D.W.*, 198 F. Supp. 2d at 91) ("The court closely considered the effects the BOP's use of solitary confinement has on inmates, and observed that 'time served in solitary confinement can lead to serious mental illness in healthy individuals. It significantly exacerbates the condition of those already suffering from emotional instabilities.'"); *see also* Stuart Grassian, *Psychiatric Effects of Solitary Confinement,* 22 Wash. U. J.L. & Pol'y 325, 333–38 (2006) (discussing the various adverse effects of solitary confinement on an individual); Alex Kozinski, *Worse than Death,* 125 Yale L.J.F. 230 (2016) (describing the conditions of solitary confinement and the need for reform); Reginald Dwayne Betts, *Only Once I Thought About Suicide,* 125 Yale L. J. F. 222 (2016) (giving a personal account of the adverse effects of solitary confinement).

Service of a sentence will be physically debilitating for defendant. Since childhood he has had epilepsy and has continually taken epilepsy medication to prevent seizures. PSR at ¶ 235. He has also been diagnosed with osteoporosis, suffers fractures in his extremities, and has compromised vision from uveitis. Defendant's June 27, 2017 Supplemental Sentencing Submission, ("Supplemental Submission") at 1-2. He has been removed to a hospital or medical facility at least 13 times during his incarceration. PSR at ¶ 236. He has also been diagnosed with Axis II Narcissistic Personality Disorder. *Id.* at ¶¶ 237-38.

Every year of incarceration for this defendant will be the equivalent of several years of incarceration for a defendant who does not have Mr. Adams's physical and background characteristics.

Because the defendant is prone to aggressive and violent behavior, as evidenced by the three disciplinary charges he received during his time at the Metropolitan Detention Center ("MDC") since his arrest, *id.* at ¶ 233, this court will not recommend a specific hospital for treatment. Instead, it defers to the judgment of the Bureau of Prisons in deciding the safest and most appropriate treatment for the defendant.

This is one of the rare cases in which this court considered incapacitation to be a critical factor in sentencing. Until the defendant ages considerably and his energy levels for dangerous crimes of this nature decrease, he is likely to continue to be a serious danger to the community requiring incapacitation. This necessitates a longer term of incarceration. As he ages the probability of his engaging in such crimes may decrease. *See* Jeremy Travis and Bruce Western, *The Growth of Incarceration in the United States: Exploring Causes and Consequences* (2014), at 155 ("Because *recidivism rates decline markedly with age*, lengthy prison sentences, *unless they specifically target very high-rate or extremely dangerous offenders*, are an inefficient approach to preventing crime by incapacitation.") (emphasis added).

The defendant is sentenced to concurrent sentences of five years on counts 1, 5, and 17, and ten year on count 8, to run consecutively with the concurrent counts, for a total term of incarceration of 15 years. He is sentenced to three years of supervised release on counts 1 and 17, and ten years of supervised release on counts 5 and 8, all of which shall run concurrently, for a total term of 10 years of supervised release. Defendant is not subject to a fine because he is unable to pay it, and it is unlikely he will be able to pay it in the future.

The conditions of his supervised release are those recommended in subsections (a), (c), and (d) in section 5D1.3 of the sentencing guidelines. The United States Probation Office may request the court to impose special conditions in subsection (e) in section 5D1.3 of the sentencing guidelines as appropriate. Additional special conditions of supervised release include the defendant complying with all sex offender laws, including applicable state and local laws; that he refrain from contact with the victims unless he receives permission from the Probation Department; that his mental health treatment may include polygraph testing if deemed appropriate by his treating medical professionals; that he is prohibited from owning and/or viewing pornographic material; that he provide notice to the Probation Office if he is living with minors; that he is prohibited from interacting with minors unless a responsible adult is present and he receives permission from the Probation Office; monitoring of the defendant's computer and any other electronic communication or data store device by the Probation Office; and a search condition based on probable cause.

## VIII. Sentence

In light of the nature and circumstances of the offense, and the history and characteristics of the defendant, Mr. Adams is sentenced to 15 years of incarceration and 10 years of supervised release. A $400 special assessment is imposed. 18 U.S.C. § 3013. Restitution for $10,500 to Victim #1 is ordered. PSR at ¶ 268. No further restitution is ordered because defendant does not possess substantial assets and is unlikely to possess such assets in the future. *See* July 6 and 7 Hr'g Tr.

## IX. Conclusion

Under section 3553(a)(2)(B) of title 18, a sentencing court must consider two major factors: general and specific deterrence. Specific deterrence and necessary incapacitation is

achieved because defendant has a lengthy history of criminal conduct, was violent towards women, particularly minors. *See* July 6 and 7 Hr'g Tr.

General deterrence is achieved by appropriately punishing and demonstrating the seriousness with which courts approach predatory sex actions involving manipulating young girls and subjecting them to unlawful forced prostitution. All relevant elements of the Sentencing Guidelines and statutes have been considered. Respectful consideration was given to the Sentencing Commission's policy statements, and all other factors listed under section 3553(a) of title 18, to ensure that the sentence is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a).

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: August 2, 2017
Brooklyn, New York